MILLER, Justice (Ret.)
(concurring in part and dissenting in part).
[¶ 125.] I fully concur with the majority on Issues 1-11. However, I dissent on Issue 12.
[¶ 126.] The majority found that the circuit court used “Berget’s unwarned statement to Dr. Bean ... to weigh against the mitigating evidence available, and therefore as justification for imposition of the death penalty[.]” Supra ¶ 113. It thus determined the court’s reference to Dr. Bean’s report was error. Id. I respectfully disagree.
[¶ 127.] In holding that the court erred, the majority analyzed whether this case should be evaluated under the principles of Estelle and concluded that it must. Supra ¶ 111. However, as the majority itself acknowledges, the Estelle Court cautioned that its holding is based on the “distinct circumstances” presented therein. Supra ¶ 101. The Supreme Court reiterated that *38 admonishment in Penry when it stated, “we have never extended Estelle ’s Fifth Amendment holding beyond its particular facts.” 532 U.S. at 795, 121 S.Ct. at 1919. See supra ¶ 102. The facts of this case are not even remotely related to those in Estelle. As a result, I do not agree that this case should be evaluated under Estelle ⅛ Fifth Amendment holding.
[¶ 128.] There is no dispute that Ber-get did not put his mental status in issue. However, the majority claims that, like in Estelle, Berget’s statement was “used against him during the capital sentencing proceeding.” Supra ¶ 100 (emphasis added). I disagree. The language of the pre-sentence verdict demonstrates that despite the circuit court’s reference to Dr. Bean’s report, it still considered Berget’s early acceptance of responsibility as a mitigating factor. Berget’s statement, recounted in Dr. Bean’s report and referenced by the court in the pre-sentence verdict, did not transform the mitigating evidence into aggravating evidence, which in turn, as the majority claims, “justified] ... imposition of the death penalty.” Supra ¶ 108.
[¶ 129.] The majority also maintains that, like in Estelle, “Berget had no notice that [his statement] would be used during ... sentencing!.]” Supra ¶ 100. From the record, I would suggest that it is unclear whether Berget knew or suspected that the circuit court would review the report. At a motions hearing, defense counsel submitted Dr. Bean’s report to the circuit court with the understanding that the report be kept “under seal.” See supra ¶ 94. In my view, the circuit court could easily have interpreted the language “under seal” to mean that no one except the court was permitted to see the report. Thus, it was fair for the court to assume that it was allowed to review the report. Moreover, in its colloquy with the court, defense counsel specifically stated: “[W]e are submitting [the report] to the [c]ourt for the [c]ourt’s consideration and review.” Id. (emphasis added). Surely, based upon defense counsel’s statement, Berget would have suspected, at the very least, that the court would review the report.
[¶ 130.] As to the remaining facts, even the majority concedes that “notable distinctions” exist between this case and Estelle. Supra ¶ 100. Nonetheless, it reasons that those “distinctions ... do not undermine [applying] the rationale of the Supreme Court’s decision in Estelle.” Supra ¶ 113. In reaching that conclusion, the majority molds the facts of this case to fit the “distinct circumstances” referenced in Estelle.
[¶ 131.] First, the majority notes that, unlike Estelle, Berget’s statement to Dr. Bean was not used affirmatively by the State. Supra ¶¶ 106-07. In Estelle, the psychiatrist “testified for the prosecution at the penalty phase on the crucial issue of [the defendant’s future dangerousness[.]” 451 U.S. at 467, 101 S.Ct. at 1875. Here, Berget’s statement was used by the circuit court in its sentence-selection determination. Nevertheless, because the court used Berget’s statement in a manner that supported the State’s position, the majority contends this is no different than the situation present in Estelle where the psychiatrist essentially acted as “an agent of the [s]tate.” See supra ¶¶ 99, 107. The majority stated, “Dr. Bean[’s] report ... was used to rebut evidence in mitigation of the crime, the relevance of which is to justify imposition of the death penalty, the position argued by the State.” Supra ¶ 107. I disagree.
[¶ 132.] As previously stated herein, while Berget’s statement may have softened the mitigating evidence, it was not tantamount to rebuttal evidence nor could it reasonably support a holding that it was *39 aggravating or a “justification for imposing the death penalty.” The circuit court merely observed that Berget may have had other motives for entering a guilty plea early. The circuit court clearly did not consider this evidence an aggravating factor, as suggested by the majority. Ultimately, Berget’s early acceptance of responsibility was still considered as a mitigating factor.
[¶ 133.] Second, unlike in Estelle where the court ordered a psychiatric evaluation sua sponte, here, Berget’s counsel sought and moved for the evaluation. Supra ¶ 100. In order to reach its conclusion that this case is not removed from evaluation under Estelle, the majority downplays this factor stating, “[b]ecause [Berget] did not place his mental status in issue[,] the fact that he moved for the psychiatric examination is of less importance[.]” Supra 11108.
[¶ 134.] Further, the majority’s reliance on Devine is misplaced. Devine held that “[t]he Fifth Amendment privilege bars the use of an incriminating statement made to a psychiatrist for the purpose of proving a defendant’s guilt.” 372 N.W.2d at 134 (emphasis added). See supra ¶ 110. Because “the Supreme Court made clear in Estelle [ ] [that] there is no distinction between the guilt and penalty phases of a capital sentencing procedure for purposes of applying the Fifth Amendment’s protection against self-incrimination[,]” the majority contends Devine’s holding requires application of Estelle. Supra ¶ 111 (emphasis added). Devine was not a capital sentencing proceeding. Thus, the majority should not rely on this Court’s holding in Devine in order to circumvent the Supreme Court’s clear instructions that Estelle’s Fifth Amendment holding must be limited to the “distinct circumstances” in that case. For the foregoing reasons, I do not believe that this case should be evaluated under Estelle’s Fifth Amendment holding or that the court’s reference to Dr. Bean’s report was error.
[¶ 135.] Lastly, even conceding that the majority is correct in holding that the circuit court erred in considering Berget’s statements to Dr. Bean, I am of the strong belief that the error was harmless. The error is harmless if we find beyond a reasonable doubt that the circuit court would still have imposed the death sentence if it had not considered Berget’s statement to Dr. Bean. See Younger, 453 N.W.2d at 838 (explaining that constitutional violations are harmless “provided the court is able to declare a belief beyond a reasonable doubt that the error ... did not contribute to the verdict obtained”).
[¶ 136.] In choosing between life or death, the circuit court weighed the aggravating evidence against the mitigating evidence and determined that death was warranted.[17] The court’s sentence is justified by the facts of this case and I am convinced it would not have changed had the court not considered Berget’s statement to Dr. Bean. A review of the aggravating and mitigating evidence presented to the court demonstrates why.
[¶ 137.] The State presented a substantial amount of aggravating evidence[18] *40 demonstrating, in part, the heinousness of the crime as well as Berget’s extensive criminal history, hopeless chance of rehabilitation, and multiple attempts of escape. Although Berget presented mitigating evidence, the circuit court disagreed with it or concluded that it was not criteria for determining an appropriate sentence. Thus, in reality, the only mitigating evidence the court found relevant to its sentence-selection determination was Berget’s early acceptance of responsibility.
[¶ 138.] The aggravating evidence in this case was overwhelming. If the circuit court had not considered Berget’s statement to Dr. Bean during the weighing process, the mitigating evidence would still have failed to outweigh the significant and often undisputed aggravating evidence. Thus, I firmly believe the sentence would still have been death.
[¶ 139.] Accordingly, I would affirm the judgment below and uphold the sentence.

. In its pre-sentence verdict, the circuit court provided, "[W]hen weighing the mitigating circumstances presented and considered in this matter and finding that they do do [sic] not outweigh the aggravating circumstances of this crime, the only effective and reasonable retribution or punishment under the totality of the circumstances in this matter is the imposition of the death penalty.”

. The court considered the facts of Johnson's murder which, due to the manner in which Berget caused Johnson's death, demonstrated an extreme indifference to human life and an obvious attempt to end Johnson’s life. More *40 over, the State introduced victim-impact testimony, photographs illustrating the circumstances of Berget’s 2003 attempted murder conviction, and victim testimony. The court observed that Berget showed no remorse except what Berget purportedly shared with his attorney and/or paralegal. Berget's prior criminal record included ten convictions, three of which were escape convictions. Not to mention, his criminal conduct was becoming more violent in nature. In addition, while an inmate at the penitentiary, Berget was disciplined at least four times for escape activities, he was found on numerous occasions to have contraband on his person or under his control, and he was classified as a maximum security risk since 2003.